HESS et al., Respondents, v. SOUTH DAKOTA CENTRAL RAILWAY COMPANY, Appellant.

(139 N. W. 334.)

1. **Evidence—Ownership—Owner's Statement—Conclusions.**

In an action for value of personal property, plaintiff may testify that he was owner of the property, in answer to a question as to who was owner, over an objection that the question called for a conclusion. So held, although there is other sufficient evidence of ownership in the record.

2. **Carriers—Ownership—Evidence of Delivery—Presumptions.**

Under a contract that a purchaser could return an article, if defective, his delivery to a carrier for that purpose will be presumed to be delivery to the consignee and vendor, entitling him to recover from the carrier for its loss. Held, further, that this presumption was not overcome by plaintiff's evidence.

3. **Damages—Measure of—Carriers—Peculiar Value—Notice of— Market Value.**

Where a carrier has no notice of the peculiar value to the owner of an article, only its market value can be recovered for its loss, under Civ. Code, Sec. 2326.

4. **Evidennce—Ownership—Carrier—Sale Contract as Evidence— Evidence of Damages.**

In an action by a consignee against a carrier, for loss of an article delivered by purchaser to carrier for return to vendor, held, that evidence as to the contract between plaintiffs and the vendee and the plaintiffs and the company from whom they purchased the article, was admissible to show ownership of the property and plaintiffs' right to sue for its value. Held, further, that such evidence was not competent to show a "peculiar

value" of the article to plaintiffs, in absence of proof that defendant carrier had notice of such value.

(Opinion filed Jan. 6, 1913.   Rehearing denied Feb. 13, 1913.)

Appeal from Circuit Court, Codington County.  Hon. C. X. Seward, Judge.

Action by S. B. Hess and another against the South Dakota Central Railway Company, for value of a threshing machine belt. From a judgment in favor of plaintiff and from an order denying a new trial, defendant appeals.  Reversed.

*Hanten & Hanten,* and *Joe Kirby,* for Appellant.

The question of the ownership of the belt rests entirely on the plaintiffs' evidence.  Mr. Beebee, plaintiffs' witness, as appears by pages 3 and 4 of the abstract, testified that he purchased the belt in question of the plaintiffs for $75; the wear on the belt amounted to $5.00.  On cross-examination he stated it was a crooked belt which would jump the pulley and would not work. (Abs. p. 3-5).  That the belt being worthless he had determined to return it to the plaintiffs.  That when he purchased the belt it was charged to him on his general account on which he made payments, but had never been credited for the value of the returned belt. (Abs. Fol. 12-17).  This clearly establishes the belt to be the property of Mr. Beebe and not that of plaintiffs.  Any cause of action would rest in Mr. Beebe.

I am aware of the legal presumption that in the absence of any showing to the contrary the consignee of property intrusted to a common carrier is presumed to be its owner, but this is only a presumption which the plaintiffs by their evidence have negatived.

Then what right have the plaintiffs to maintain this suit? What damage have they suffered?  Plaintiffs on the course of the trial seemed to have realized their position and attempted to bolster it up by Mr. Hess's testimony (we think improperly) over our objection, to the effect (Abs. Fol. 16) that plaintiffs had an arrangement with the company from whom they had purchased such belt to return a defective one and get another in its place, but no claim is made that Mr. Beebe had any such right.  This is not met by the plaintiffs' claim that he was willing to make Mr. Beebe a donation. (Abs. Fol. 15.)  Even if they had attempted to show that he had such right, which they have not, still that right would not operate to the prejudice of the plaintiffs until he had returned

to them such belt, and not having done so it seems to us Mr. Bee-
bee is still the loser. At the trial he was out the belt; he had re-
ceived no other in its place from Hess & Rau, neither had his ac-
count been credited with the value thereof. Q. "Mr. Hess, who
was the owner of the belt at the time?" To this defendant ob-
jected as incompetent and immaterial, asking for the conclusion
of the witness, and that the evidence already disclosed who own-
ed the belt. This objection being overruled the witness answer-
ed: "The belt belongs to Hess & Rau; that is the condition they
are sold on."

Is it proper, where ownership is directly in question, for the
plaintiffs to state such conclusion, and thereby bind the jury? I
think not. Particularly so when his evidence there disclosed the
condition of the title. The rule, as I understand it, is this, that
where ownership is incidentally involved a witness may testify to
such fact, but where the question of ownership is directly in is-
sue then the facts must be presented to the jury and they must
draw the conclusion of ownership or lack of ownership from such
facts. Hite v. Stimmell, 25 Pac. (Kan.) 852; Simpson v. Smith,
27 Kans. 565; Dunlap v. Berry, 39 Am. Dec. 413; Benson v.
Files, 68 S. W. (Ark.) 493.

Next the witness Hess is asked: Q. "Now when these belts
are defective, of this kind, are returned to you, what arrangements,
if any, have you with the company you get them from, as to re-
turning the belts, or otherwise?" This was objected to as not
within the issues; not binding on the defendant; no such issue was
tendered by the pleadings; nothing by which the defendant could
be expected to meet such line of testimony. It called for, if any-
thing, the special value of the property, not its general material
value as alleged in the complaint, and such objection should have
been sustained. That the answer was prejudicial in the eyes of
the jury, (Abst., Fol. 17), will hardly admit of debate.

For these reasons it seems to me that the evidence was in-
sufficient to sustain the verdict; that the defendants were entitled
to have a directed verdict in their favor, made at the close of the
case, and as a corollary that the Court erred in refusing the de-
fendant a new trial.

*Sherin & Sherin,* for Respondents.

The position of the Respondents in this case is that the ques-

tion of ownership is not an issue in this case. That it is immaterial so far as this case is concerned whether Beebe was the owner or Hess & Rau, were the owners. Under the authorities in this country a Common Carrier cannot raise the question of ownership as to goods carried by it. As a general rule when the goods are committed to a Common Carrier, and consigned to some third person, that such consignee has such an interest in the goods that he. may maintain an action against a common carrier for injury to the goods during the transit, or for loss of the goods during transit. It is immaterial whether he would be the general owner or not.

It does appear from the record that the belt was sold or delivered to Beebe at the price of $75.00, but that the belt was warranted and if it was not what it was represented to be, that on return of the belt by Beebe to the respondents, they could return it to the wholesale house and reccive a new belt for it. There is no evidence that Beebe could make this exchange. Beebe had a right to return the belt to respondents if it did not work and they would give him one that worked properly, and under this state of facts we claim that the respondents were in fact the owners of the belt, and if not they had such an interest in the belt as would entitle them to maintain an action for its loss against a common carrier. Texas & P. R. Co. v. Turner, 43 Texas Civ. App. 608, 97 S. W. 509; Southern Express Co. v. Armstead, 50 Ala. 352; Mo. P. R.. Co. v. Peru-Van Zandt Imp. Co., 73 Kan. 295, 6 L. R. A. (N. S.), 1058; Ramsey Co. v. Kilsea, 22 L. R. A. 415; Bank of Irwin v. American Express Company, 102 N. W. 107 (Ia.).

It might be claimed by the Appellant there was some evidence to rebut the presumption of ownership in the consignee in this case as to the ownership. If such a question is raised we first say; the jury has passed upon it, and we next maintain that it would be no defense in this action for the Appellant. Brown v. Shaw, 53 N. W., page 633, (Minn) ; Chamberlain v. West, 33 N. W. 114; Benjamin v. Levy, 38 N. W. 702; Laing v. Nelson, 43 N. W. 476; Jelletts v. St. Paul M. & M. Ry. Co., 15 N. W. 237, (Minn.) ; Grinnell Collins Company v. Chicago, Milwaukee & St. Paul Ry. Co., in 124 N. W. 377, 26 L. R. A. (N. S.), 437; Ramsey & Gore Co. v. Kelsea, reported in the 22nd L. R. A. 416, notes, (N. J.) ; S. L. Clute v. Chicago, Rock Island & Pacific, 30 L. R. A. (N.

S.), 1071, (Kas.); Webb v. Winter, 1 Cal. 417, (Cal.); Vol. 2, of American and Eng. Ency. of Law, 810; Lloyd v. Haugh & Kenan Storage and T. Co. 21 L. R. A. (N. S.), 188, (Pa.); 6 Cyc. Law & Proc. p. 510; Addison Torts, Sec. 701.

We claim that proper evidence was submitted to the jury, and the jury found from it that the Respondents were the owners of the property. It was a proper question to submit to the jury. The appellant finds fault with some of the direct questions put to the witness Hess, one of the respondents, while upon the witness stand. As we understand the law the owner of property, or a person who knows of the ownership, has a right and it is proper to testify directly to the question of ownership. Olson v. O'Connor, 84 N. W. 359 (N. D.).

The same question has been decided by the Supreme Court of this state in the case of Peet v. Dakota Fire and Marine Insurance Company, 47 N. W. 532.

The only other question raised by the appellant in his brief is the question as to the amount or damages. The evidence shows that the belt was worth $75.00 at the time it was sold or delivered by the respondents to Beebe. Beebe testified, and it is not disputed, that the wear on the belt while he had it would have been about $5.00, (Fol. 8 abstract). Mr. Hess, one of the respondents testified that the market value of the belt at the time it was delivered to Mr. Beebe was $75.00. (Abstract Fol. 115). But Mr. Hess further testified that these belts are all guaranteed and if found defective, they have the privilege of returning them before th 1st of January, the same year, and they will be replaced by credit or a new belt. This one was never returned to us and we have never delivered any belt to Mr. Beebe in place of it. (Abstract Fol. 17.) On cross examination he said that they had not credited Mr. Beebe with $75.00 because the belt had not yet been returned to them. Mr. Hess was entitled to recover, and his damages were what the belt was worth to him in Watertown at the time it was lost by the appellant. According to the testimony, which is undisputed, he could return it to the wholesale house and receive a good belt worth $75.00, so that to him this belt was worth $75.00, and that would be the amount of damages. Missouri P. R. Co. v. Peru-Van Zandt Imp. Co., Supra.; Ringgold v. Haven, 1 Cal. 108; Hart v. Spaulding, 1 Cal. 213; Lloyd v.

Haugh & Keenan Storage & T. Co. 21 L. R. A. (N. S.), page 189 (Pa.).

"The plaintiff is entitled to recover the value of things lost and this is not necessarily the market value." Hutchinson, Carr, 3d Ed. Sec. 1363; 3 Joyce, Damages Sec. 1949, page 2012; 3 Sutherland Damages, 3d Ed. Sec. 955, page 2816; Laubaugh v. Pennslyvania R. Co. 28 Pa. Super Ct. 247; Trout v. Kennedy, 47 Pa. 387; Green v. Boston 'L. R. Co. 128 Mass., 221, 35 Am. Rep. 370; Fairfac v. New York C. & H. R. R. Co. 73 N. Y. 172; 29 Am. Rep. 119; Denver, S. P. & P. R. Co. v. Frame, 6 Colo. 385; Parmelee v. Raymond, 43 Illinois, App. 609.

CORSON, J.    This is an appeal by the defendant from a judgment in favor of the plaintiffs and from the order denying a new trial.    The action was instituted by the plaintiffs to recover $75, the value of a belt used on a threshing machine outfit alleged to have been delivered to the defendant as a common carrier at the way station of Thomas on the line of its road to be carried by the defendant to Watertown and there to be delivered to the plaintiffs, which property was lost in transit, or at least not delivered to the plaintiffs.    The answer of the defendant is a general denial.

It is disclosed by the evidence that the plaintiffs sold the belt to one Beebe under a guaranty that if it was not satisfactory it might be returned to the plaintiffs and a new belt would be supplied by them to the said Beebe to take its place; that Beebe, being dissatisfied with the belt, left it at Thomas with a friend, there being no depot at that place, to be shipped by him to the plaintiffs at Watertown; and that the same was delivered to the railroad company and taken aboard its train, but for some reason not explained the defendant failed to deliver it to the plaintiffs, who brought this action to recover the value of the same.

A number of errors are assigned, but in the view we take of the case the only questions presented for determination by this court are:  (1) Did the court err in permitting the witness Hess to answer the question, "Who is the owner of the belt at this time?" (2) In permitting the witness Hess to testify as to his arrangement with Beebe to furnish him with a new belt in case the one sold to him was defective or not satisfactory. (3) In permitting the witness Hess to testify as to his contract with the company from which he purchased the belt to return any defective belt

and receive a new one therefor. (4) Did the court err in refusing to direct a verdict for the defendant at the close of the plaintiff's evidence on the grounds stated? (5) Did the jury err in finding a verdict for the sum of $75 in favor of the plaintiffs?

[1] On the trial the plaintiff Hess was asked the following question: "Mr. Hess, who is the owner of the belt at this time?" This question was objected to as incompetent, immaterial, and calling for the conclusion of the witness. The objection was overruled and exception taken. He answered: "The belt belongs to Hess & Rau. That is the condition they are sold on." The defendant moved to strike out this answer, which motion was not ruled upon by the court and the defendant took exception.

It is contended by the appellant that the objection to this question should have been sustained for the reason that it stated a conclusion and not the facts upon which the conclusion was founded. This objection is clearly untenable under the ruling of this court in the case of Hawley v. Bond, 20 S. D. 215, 105 N. W. 464, in which this court held, as appears from the headnote, as follows: "In an action to recover property levied on, alleged to belong to the plaintiff and not to the judgment debtor, plaintiff was entitled to testify that the property was hers, in answer to a question as to who was the owner at the time of the levy, over an objection that the question called for the witness' opinion, and not for a fact." And the court in its opinion quotes in considerable length from the decisions of the learned Court of Appeals of New York and the Supreme Court of Iowa, sustaining the views expressed by this court.

[2] In the case at bar, however, the evidence clearly establishes the ownership of the belt in the plaintiffs independently of the answer of Hess to the question propounded, as it appears by the evidence in this case that under the contract between the plaintiffs and Beebe, as testified to by plaintiff Hess and by Beebe, the latter had the right to return the belt, and, having delivered the same to the defendant consigned to Hess & Rau at Watertown, the belt was thereby delivered to the plaintiffs and they became the owners of the same.

It seems to be a general rule that where property is delivered to a common carrier, consigned to a person named, such delivery

presumptively constitutes a delivery to the party named as consignee.

In 6 Cyc. 511, it is stated: "The presumption that the title to the goods passes to the consignee on delivery to the carrier will sustain an action by the consignee as owner, either in tort or for breach of contract; the contract of shipment being presumed to have been made for his benefit"—citing among others the following cases: Griffith v. Ingledew, 6 Serg. & R. (Pa.) 429, 9 Am. Dec. 444; The Geiser (D. C.) 19 Fed. 877; Green v. Clark, 13 Barb. (N. Y.) 57.

The rule is thus laid down in 3 Enc. Pl. & Pr. 829: "As a general rule, the consignee is considered the person prima facie entitled to sue for loss or injury to goods shipped, as the law intends that by delivery to the carrier the title to the goods vests in the consignee. The presumption thus raised may, nevertheless, be rebutted; and, if overcome, the action may properly be brought in the name of the consignor."

And Hutchinson on Carriers (3d Ed.) states the law in section 1304 as follows: "When the carrier has subjected himself to liability for the loss of the goods or for injury done to them while in his custody, and it becomes necessary to compel him to make compensation to the injured party by an action at law, the first question to be determined is, in whose name the action must be brought. This is, however, a question about which there can be but little difficulty. The presumption of the law is that the party to whom the goods are consigned is their owner and the person who is entitled to sue for the damage, and the action should in most cases be commenced in his name. But notwithstanding the presumption, it by no means necessarily follows that the consignee is in fact the owner, or that he is any wise interested in them, or that he is the only party entitled to sue the carrier for the loss or damage."

In the somewhat analagous case of Southern Express Co. v. Armstead, 50 Ala. 352, the rule was stated by the learned Supreme Court of Alabama as follows: "The consignee of goods has a right to sue for their loss by the carrier, notwithstanding another party may be the owner of them. The obligation is to deliver to him. Generally, the property vests in him by the mere delivery

to the carrier. Although the absolute or general owner of person · al property may support an action for any injury thereto, if he have the right of immediate possession, this does not necessarily divest the right of the consignee to sue, notwithstanding he has never had the actual possesion. I Chit. Plead. 6, 61, 153; Everett v. Saltus, 15 Wend. (N. Y.) 474."

It is contended by the appellant in this case that the presumption on the part of the plaintiffs is overcome by their evidence. But we are of the opinion that the presumption was not overcome in this case, for, as before stated, Beebe had the right under his contract with the plaintiffs to return' the property to them, and he exorcised the right by delivering the property to the defendant addressed to the plaintiffs as consignees. The title to the property, therefore, and right to its possession, was transferred by Beebe to the plaintiffs. We are unable to discover in the evidence that Beebe retained any ownership of the property after he delivered it to the railroad company consigned to the plaintiffs.

[3] It is further contended by the appellant that the evidence on the part of the plaintiffs establishes the fact that the belt was of but little value, and that the plaintiffs were not, therefore, entitled to recover the $75 damages awarded by the jury. We are of the opinion that this contention should be sustained under the provision of section 2326, C. C., which provides: "Where certain property has a peculiar value to a person recovering damages for a deprivation thereof, or injury thereto, that may be deemed to be its value against one who had notice thereof before incurring a liability to damages in respect thereof, or against a willful wrongdoer." In the case at bar there is no evidence proving, or tending to prove that the defendant had notice of the peculiar value of this belt to the plaintiffs before incurring liability to damages in respect thereof. The plaintiffs therefore were only entitled to recover the market value of the proprty as against the defendant, and not its peculiar value to them, and, there being no evidence of the market value, the jury were not authorized to find a verdict for the sum of $75 or any other definite sum under the evidence.

We have discussed the question as to the ownership of the belt at considerable length for the reason that the same question may arise on another trial of the action, and it is proper for us in such cases to express our views upon the question.

[4]   We are further of the opinion that the evidence as to the contract between the plaintiffs and Beebe and the plaintiffs and the company from which they purchased the belt was properly admitted for he purpose of determining the ownership of the property and the right of the plaintiffs to bring this action, but not for the purpose of showing a "peculiar value" of the belt to the plaintiffs, in the absence of proof that the defendant had notice of its peculiar value.

The judgment of the circuit court and order denying a new trial are therefore reversed.